**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LAURA R., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 18 C 4969 |
| | ) |
| ANDREW M. SAUL, | )   Magistrate Judge Finnegan |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Plaintiff Laura R. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment. After careful review of the record, the Court agrees with Plaintiff that the case must be remanded for further proceedings and so denies the Commissioner's motion.

## BACKGROUND

Plaintiff applied for DIB and SSI on January 22, 2015, alleging that she became disabled on November 28, 2014 due to depression, anxiety, and suicidal ideation. (R. 158, 162, 181). Born in 1968, Plaintiff was 46 years old at the time of the applications, making her a younger individual. (R. 162). She completed the 10th grade and lives in an apartment with her boyfriend. (R. 182, 520). From 1999 to January 2012, Plaintiff worked

as an order entry production manager at a factory. (R. 182). She then worked briefly as an assistant plant manager for a finishing company from February to October 2012 before taking a position as a cashier/stocker at a department store in November 2012. (*Id.*). Plaintiff held the cashier job until November 28, 2014 when she quit due to her mental condition. (R. 181-82). She has not held any additional jobs since the alleged disability onset date.

The Social Security Administration denied Plaintiff's applications initially on May 20, 2015, and again upon reconsideration on October 8, 2015. (R. 38-86). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Luke Woltering (the "ALJ") on March 8, 2017. (R. 515). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Kari Seaver (the "VE"). (R. 516-41). On May 24, 2017, the ALJ found that Plaintiff's bipolar disorder with additional diagnoses of depression, anxiety, and rule out personality disorder are severe impairments, but they do not meet or equal any Listed impairment. (R. 20-22). After reviewing the medical evidence, the ALJ concluded that Plaintiff is not disabled because she has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with several nonexertional limitations. Specifically, Plaintiff can understand, remember, carry out, and sustain performance of simple, routine work instructions. She also needs to work in a low pressure and low stress work environment "defined as one requiring only occasional and simple work-related decision making, occasional changes in the work setting, no work at a production rate pace, such as assembly line work, only occasional and superficial interaction with coworkers and supervisors, no more than brief and incidental contact with the public, and no loud noise."

(R. 22). The ALJ accepted the VE's testimony that a person with Plaintiff's background and RFC can work as a hand packer, assembler, or sorter, and so found Plaintiff not disabled. (R. 22-27). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) failed to adequately consider her mental functioning on "bad days"; (2) improperly evaluated her statements regarding the limiting effects of her bipolar symptoms; and (3) erred in assessing the VE's testimony. For the reasons discussed below, this Court agrees with Plaintiff that the case must be remanded for further consideration of the limiting effects of her bipolar disorder.

## DISCUSSION

**A.     Standard of Review**

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g). The Court will "reverse the findings of the Commissioner only if they are not supported by substantial evidence or if they are the result of an error of law." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In making this determination, the Court considers "the entire administrative record but do[es] not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (internal quotations omitted). When the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful

review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover DIB or SSI, a claimant must establish that she is disabled within the meaning of the Social Security Act. *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380, at *1 (N.D. Ill. Nov. 28, 2016). A claimant is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C.     Analysis**

   **1.     Evaluation of Plaintiff's Bipolar Disorder**

Plaintiff argues that the case must be reversed or remanded because the ALJ failed to consider the nature and extent of her functioning on bad mental health days. The

4

ALJ found that when Plaintiff "is not having a mental health crisis," she can perform "a range of work" within the stated RFC. (R. 25). The phrase "mental health crisis" appears to be a reference to Plaintiff's two psychiatric hospitalizations. On November 14, 2014, Plaintiff went to the MacNeal Hospital Emergency Department complaining of suicidal thoughts. (R. 358, 362-400). She exhibited anxiety, depression, psychomotor retardation, a blunt affect, and social withdrawal, as well as auditory and visual hallucinations. (R. 358, 382). Doctors admitted Plaintiff to the hospital and prescribed a variety of medications, including Celexa, lithium, phenobarbital, prazosin, and Seroquel. (R. 358). Following her discharge on November 18, 2014, Plaintiff completed an intake questionnaire for outpatient treatment with the hospital's Behavioral Health Services on November 20, 2014. (R. 389, 425-41). She spoke with a nurse on November 21, 2014 but never actually attended any therapy sessions. (R. 439). As noted, Plaintiff then applied for disability benefits on November 28, 2014.

Plaintiff was hospitalized at MacNeal again on February 4, 2015 due to depressive disorder, suicidal thoughts, and benzodiazepine dependence. (R. 443). She demonstrated a variety of maladaptive personality traits, including affective instability, impulsivity, interpersonal dysfunction, avoidant coping style, and chronic feelings of emptiness. (R. 461). Doctors discharged Plaintiff three days later on February 7, 2015 with a prescription for lithium and instructions to follow up with outpatient services. (*Id.*). There is no evidence she returned to MacNeal for further treatment.

The ALJ acknowledged Plaintiff's hospitalizations but determined that "examination findings were generally normal when not hospitalized." (R. 23-24, 26). This is not entirely accurate. After the second hospitalization, Plaintiff started seeing

5

psychiatrist C. Dudzinski, M.D., at Riveredge Hospital. (R. 314). During examinations on April 29, May 27, and July 22, 2015, Plaintiff presented with fairly normal affect, good insight and judgment, intact cognition and memory, and logical thought process. (R. 26, 310, 312, 314). Yet she also complained of occasional suicidal ideations, high levels of anxiety, depression, and occasional auditory and visual hallucinations. (R. 310, 313, 314). Dr. Dudzinski diagnosed bipolar disorder, anxiety disorder, and rule out borderline personality disorder, and made several adjustments to Plaintiff's medications to try and keep her stable. (R. 310, increased lithium and Vistaril and added Latuda and Remeron on 4/29/2015; R. 312, increased Latuda and continued other medications on 5/27/2015; R. 315, decreased Latuda, discontinued Remeron, and started Doxepin on 7/22/2015).

Plaintiff next pursued treatment about a year later at Riveredge on July 19, 2016. The name of the treating physician is illegible and the handwritten notes are difficult to decipher. (R. 505-06). However, it appears that Plaintiff complained of racing thoughts, paranoid thoughts, and passing thoughts of death. She reported that when she is manic she becomes really angry and screams and throws things. This occurs several times a day and each episode lasts 5 to 10 minutes. She also experiences crying episodes every few days. (R. 505). On examination, Plaintiff's thought process was logical and her speech was normal, but she exhibited a "sad" mood, passing thoughts of death, and paranoia. The doctor diagnosed bipolar disorder and prescribed a variety of medications including Depakote, Latuda, and Wellbutrin. (R. 506).

At a follow-up appointment on August 3, 2016, Plaintiff continued to complain of racing thoughts and said she had stopped taking Depakote and Wellbutrin because she was "climbing through walls." (R. 504). She also never started taking Latuda because

6

her insurance would not cover it. Plaintiff reported hearing her dead mother's voice and the doctor once again prescribed a variety of medications. (*Id.*). On August 24, 2016, Plaintiff returned to Riveredge and was tearful talking about her brother's recent incarceration. She was not sleeping well and complained of chest pain. The doctor continued Plaintiff's medications and discussed starting Remeron. (R. 503). A few months later, on November 22, 2016, Plaintiff had stopped taking her medications and was still feeling depressed about her brother. The doctor instructed her to take her medications, including Celexa, trazodone, and Seroquel. (R. 502). At appointments on December 19, 2016 and January 19, 2017, Plaintiff complained of passing thoughts of death and ongoing difficulties sleeping. (R. 500, 501).

The ALJ discussed these treatment records but did not explain how they support a finding that Plaintiff's exams have all been essentially normal since her hospitalizations. (R. 25). The mere fact that Plaintiff's memory, judgment and thought process were grossly intact at several office visits does not necessarily cancel out reports that she was paranoid, hearing voices, and experiencing passing thoughts of suicide and death. Since "bipolar disorder is episodic in nature," a claimant may have severe limitations despite being able to behave "pretty normally" during office visits. *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006). In addition, a person like Plaintiff who has a chronic disease and takes heavy drugs "is likely to have better days and worse days." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). The ALJ did not consider this possibility in assessing Plaintiff's RFC. *See Anthony S. v. Saul*, No. 18 C 50220, 2020 WL 30601, at *3, 4 (N.D. Ill. Jan. 2, 2020) (reversing where the ALJ placed too much weight on normal examination findings without considering whether they coincided with good periods).

7

The Commissioner finds it significant that the ALJ relied on opinions from two non-examining State agency reviewers in determining Plaintiff's RFC. (Doc. 28, at 6). Of course, the physicians provided those opinions in 2015 and so did not have access to records from 2016 showing Plaintiff suffered from racing and paranoid thoughts, crying spells, and manic episodes. *See, e.g., Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (reviewers' opinions may be entitled to less weight where they did not have the benefit of seeing complete treatment records).

Remand is also necessary to address flaws in the ALJ's analysis relating to Plaintiff's statements regarding the severity of her symptoms. (R. 25-26). Plaintiff testified that she suffers from significant problems with memory and concentration, experiences panic attacks "all the time," and has sudden manic episodes at least once a day where she becomes very angry and starts yelling and throwing things and slamming doors. (R. 533-36). In discrediting this testimony, the ALJ focused on Plaintiff's ability to drive her boyfriend to work, go to the grocery store, and cook. (R. 25). However, the ALJ ignored Plaintiff's testimony that her boyfriend only worked 5 minutes from their home; he has to remind her about appointments and other responsibilities; and she cannot shop consistently due to panic attacks, often needing her boyfriend to accompany her and prepare the grocery list. (R. 520, 527, 532, 534). *See Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (ALJ erred in ignoring the plaintiff's "qualifications as to *how* he carried out [daily] activities.") (emphasis in original). While this Court does not determine how the ALJ should weigh the evidence, the ALJ's analysis must adequately explain how this was done based on the relevant testimony. As the Seventh Circuit has cautioned, a plaintiff's "ability to struggle through the activities of daily living does not mean she can manage the

8

requirements of a modern workplace." *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011).

The ALJ further erred by discounting Plaintiff's testimony based on evidence that she was not compliant with treatment, (R. 26), without also acknowledging that "mental illness in general and bipolar disorder in particular . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail*, 454 F.3d at 630. Finally, the records do not support the ALJ's conclusion that Plaintiff admitted to improvement with medication. (R. 26). At best, they show that Plaintiff thought lithium worked well for her during the first hospitalization but that she did not notice "any significant improvement" on the medication during the second hospitalization. (R. 313, 460). Notably, Plaintiff told Dr. Dudzinski on April 29, 2015 that a previous psychiatrist had prescribed multiple antidepressants "which did not significantly improve her symptoms." (R. 313).

Viewing the record as a whole, the ALJ did not properly analyze Plaintiff's bipolar disorder and the case must be remanded for further consideration of that issue.

**2.    Remaining Arguments**

The Court does not find any specific error with respect to Plaintiff's remaining arguments, but the ALJ should take the opportunity on remand to assess all of the medical and testimonial evidence of record, and obtain updated VE testimony as appropriate.

## **CONCLUSION**

For reasons stated above, Plaintiff's request to reverse the ALJ's decision is granted, and the Commissioner's Motion for Summary Judgment [27] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is

remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: January 10, 2020

*Sheila Finnegan*

SHEILA FINNEGAN
United States Magistrate Judge